**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

**MAGDALENA ORNSTEIN-SLOAN, on behalf of herself and all others similarly situated,**

**Plaintiff,**

**-against-**

**PUBLIC PARTNERSHIPS, LLC and PUBLIC PARTNERSHIPS HOME CARE LLC,**

**Defendants.**

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**Case No.: 1:26-cv-6472**

**JURY TRIAL DEMANDED**

## NATURE OF THE ACTION

1. This is a class and collective action brought on behalf of personal assistants ("PAs") who provide home care services in New York City and in Nassau, Suffolk, and Westchester Counties through the New York State Medicaid Consumer Directed Personal Assistance Program ("CDPAP") and who are employed and paid by Public Partnerships, LLC and Public Partnerships Home Care LLC ("PPL" or "Defendants"), the sole statewide fiscal intermediary for CDPAP. The CDPAP was designed to empower Medicaid members with chronic illness or disabilities to choose their own PAs to provide caregiving in their homes, and to pay those individuals fair wages for the critical caregiving work they do. Plaintiff Magdalena Ornstein-Sloan and the putative class of PAs are the people who provide this important caregiving work.

2. PPL fails to pay Plaintiff and thousands of other PAs their full wages at their legally required rate, in violation of the New York Home Care Worker Wage Parity Act, Public Health Law § 3614-C ("WPA"); the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); and Articles 6 and 19 of the New York Labor Law ("NYLL").

3. The WPA requires that home care workers, including Pas, working in New York City, and Nassau, Suffolk, and Westchester Counties be paid a minimum rate of total compensation.

4. The goal of the WPA is to ensure fair and consistent compensation for home care workers. The WPA accomplishes this by mandating a base wage plus a supplemental benefit pay ("Wage Parity Supplement Pay"), which may be paid in cash or qualified and equivalent benefits, for a total minimum compensation ("Wage Parity Compensation").

5. In 2026, PAs working in New York City must be paid Wage Parity Compensation of $22.19 per hour: a base wage of $19.65 per hour plus a Wage Parity Supplement Pay of $2.54 per hour. In 2026, PAs working in Nassau, Suffolk, and Westchester Counties must be paid Wage Parity Compensation of $21.32 per hour: a base wage of $19.65 per hour plus a Wage Parity Supplement Pay of $1.67 per hour. *See* N.Y. State Dep't of Health, *MRT 61: Home Care Worker Wage Parity*, https://www.health.ny.gov/health_care/medicaid/redesign/mrt_61.htm (last visited Oct. 7, 2026); N.Y. State Dep't of Labor, *Minimum Wage for Home Care Aides (FARE Grant)*, https://dol.ny.gov/minimum-wage-home-care-aides-fare-grant (last visited Oct. 7, 2026).

6. All or a portion of Wage Parity Supplement Pay may be paid in the form of certain benefits. The benefit cannot supplant one the employer is already legally mandated to provide. The benefit must be useable by the worker. The benefit must be equal in value to the employer providing the Wage Parity Supplement Pay as cash wages.

7. PPL fails to pay PAs the mandated Wage Parity Supplement Pay in cash wages or legally permissible benefits in violation of the WPA and the NYLL.

8. PPL purports to pay PAs their Wage Parity Supplement Pay in a combination of monetary wages and deductions of their wages for benefits. The benefits PPL purportedly provides, however, fail to comply with the WPA, NYLL § 193, and 12 N.Y.C.R.R. Subpt. 195-4.

9. First, PPL deducts a portion of the PA's Wage Parity Supplement Pay to cover the cost of paid safe and sick leave that PPL is already required by state and local law to provide. *See* NYLL § 196-b; N.Y.C. Admin. Code § 20-911 *et seq*.

10. PPL's use of Wage Parity Supplement Pay to provide a benefit PPL is already legally required to provide PAs violates the WPA and NYLL.

11. Second, for full-time PAs who opt out of PPL's health plan, part-time PAs who are ineligible for PPL's health plan, and PAs whose accrued sick leave exceeds 56 hours, PPL deducts a portion of PAs' Wage Parity Supplement Pay purportedly to fund 401(a) employer-sponsored retirement accounts. However, upon information and belief PPL has not placed the Wage Parity Supplement Pay into 401(a) retirement accounts for the PAs. Such a deduction of PAs' Wage Parity Supplement Pay resulting in no useable or equivalent benefit – indeed no benefit whatsoever – violates the WPA and NYLL § 193.

12. Third, where PPL does allocate a PA's Wage Parity Supplement Pay to a purported 401(a) retirement account, PPL also takes $0.05 per hour out of that Wage Parity Supplement Pay as a fee to cover its own costs of maintaining the employer-sponsored plan. Using a PA's wages to pay PPL's own administrative costs gives the PA no usable or equivalent benefit, and it violates the WPA, NYLL § 193, and 12 N.Y.C.R.R. Subpt. 195-4.

13. Fourth, PPL fails to pay overtime at the legally required overtime rate. PPL calculates overtime using a regular rate that leaves out compensation the law requires it to include.

14. When PAs work more than forty hours in a workweek, PPL pays them one and one-half times their cash base wage only, and fails to use Wage Parity Supplement Pay in the calculation of their overtime rate. This practice violates the overtime requirements of the FLSA and the NYLL.

15. Plaintiff seeks to represent a class of thousands of PAs employed by PPL in New York City, and Nassau, Suffolk, and Westchester Counties, who have not been paid their full Wage Parity Compensation by PPL from June 24, 2026, continuing to-date. Plaintiff also brings her FLSA claim as a collective action on behalf of PAs who worked more than forty hours in a workweek and were not paid overtime at one and one-half times their regular rate.

16. Plaintiff seeks, on behalf of herself, a putative class, and a collective of similarly situated PAs, recovery of unpaid wages, unpaid overtime compensation, liquidated damages, statutory damages for wage statement violations, pre-judgment and post-judgment interest, attorneys' fees and costs, and declaratory and injunctive relief.

## JURISDICTION AND VENUE

17. This Court has personal jurisdiction over Defendants because Defendants conduct substantial business in New York, contract with the New York State Department of Health ("DOH") to serve as the statewide CDPAP fiscal intermediary, and pay hundreds of thousands of PAs who work in New York.

18. This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. §§ 1331 and 1337, and pursuant to 29 U.S.C. § 216(b).

19. This Court has supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367, because those claims are closely related to the FLSA claim that they form part of the same case or controversy under Article III of the United States Constitution.

20. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

21. Alternatively, this Court has subject matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d) under the Class Action Fairness Act ("CAFA") because the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 members in the proposed class; and at least one member of the proposed class is a citizen of a State different from at least one Defendant.

22. Upon information and belief, the proposed class includes approximately 200,000 PAs. For Plaintiff alone, PPL fails to pay $1.54 per hour of the $2.54 per hour of Wage Parity Supplement Pay it must pay her in cash wages or legally permissible benefits. PPL similarly fails to pay a comparable portion of the $1.67 per hour of Wage Parity Supplement Pay it owes PAs in Nassau, Suffolk, and Westchester Counties in cash wages or legally permissible benefits. Upon information and belief, the total amount of Wage Parity Supplement Pay PPL fails to pay its PAs in cash or legally permissible benefits, therefore, exceeds $5,000,000 class-wide within a matter of weeks, before accounting for liquidated damages under NYLL § 198(1-a) and statutory damages under NYLL § 198(1-d).

23. Upon information and belief, Defendant Public Partnerships, LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Georgia. For purposes of CAFA, it is a citizen of Delaware and Georgia. Plaintiff is a citizen of New York. Minimal diversity is, therefore, satisfied.

24. The exceptions to CAFA jurisdiction set forth in 28 U.S.C. § 1332(d)(3) and § 1332(d)(4) do not apply. Defendant Public Partnerships, LLC, a primary defendant from which significant relief is sought, is not a citizen of New York. In addition, within the three years

preceding the filing of this action, another class action asserting the same or similar factual allegations was filed against Defendant Public Partnerships, LLC on behalf of the same or other persons. *See Calderon v. Public Partnerships, LLC*, No. 1:25-cv-02320 (E.D.N.Y.); 28 U.S.C. § 1332(d)(4)(A)(ii).

25. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district. Plaintiff resides and works in Queens County.

## THE PARTIES

### Plaintiff

26. Plaintiff Magdalena Ornstein-Sloan is an adult individual who resides in Queens County, New York.

27. At all times relevant to this Complaint, Plaintiff has worked as a PA, paid through PPL, providing home care services to a CDPAP Medicaid member ("Consumer") in New York City.

28. Plaintiff has been employed as a PA paid through PPL since March 2025. She regularly works more than forty hours per workweek.

29. Plaintiff and the class of PAs she seeks to represent ("Class Members"), and the members of the FLSA Collective defined below, are non-exempt employees of the Defendants within the meaning of the FLSA and the NYLL.

### Defendants

30. Defendant Public Partnerships, LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Georgia.

31. Upon information and belief, Defendant Public Partnerships Home Care LLC is an affiliate of Defendant Public Partnerships, LLC and maintains an office at 17 Plaza Drive, Latham, New York 12110. Defendant Public Partnerships Home Care LLC is identified as the employer on the wage statements PPL issues to PAs.

32. Since April 1, 2025, pursuant to a contract with DOH, PPL has served as the sole statewide fiscal intermediary for CDPAP and is responsible for processing wages, benefits, and taxes for PAs throughout New York State.

33. Upon information and belief, Defendants operate as a single integrated enterprise and jointly employ Plaintiff and the members of the proposed class. Defendants share common ownership, management, and control, and jointly maintain the payroll, timekeeping, wage parity allocation, benefits, and wage statement practices challenged in this Complaint.

34. Defendants maintained control, oversight, and direction over Plaintiff and the Class Members, including, but not limited to, timekeeping, payroll, the allocation of Wage Parity Compensation (including Wage Parity Supplement Pay), the administration of purported benefits, and the issuance of wage statements.

35. Defendants have been the employer of Plaintiff, the Class Members, and the members of the FLSA Collective within the meaning of the FLSA and the NYLL.

## FACTUAL ALLEGATIONS

### CDPAP and PPL

36. CDPAP is a New York State Medicaid program that allows Consumers to choose their own home care aides, including family members, friends, and neighbors, to enable them to remain in their homes and communities. These caregivers are known as PAs.

37. Prior to April 1, 2025, PAs were paid through hundreds of fiscal intermediaries across New York State. Effective April 1, 2025, DOH selected PPL to serve as the single statewide fiscal intermediary for CDPAP.

38. Upon information and belief, approximately 200,000 PAs work in New York City and Nassau, Suffolk, and Westchester Counties, and are employed and paid by PPL.

**PPL's Obligations Under the WPA**

39. The WPA requires, as a condition of Medicaid reimbursement, that home care aides who perform Medicaid-reimbursed work in New York City and in Nassau, Suffolk, and Westchester Counties receive total compensation of not less than the applicable minimum rate of home care aide total compensation. N.Y. Pub. Health Law § 3614-C.

40. Total compensation required under the WPA consists of a base wage plus a supplemental benefit pay ("Wage Parity Supplement Pay"). The Wage Parity Supplement Pay may be paid as additional cash wages or in the form of benefits, provided these benefits are legally permissible. The benefit must be of equal value to the PA as supplemental cash wages. It must be usable by the PA. The benefit cannot be one the employer is already under a legal duty to provide.

41. PAs, including Plaintiff, are home care aides within the meaning of the WPA.

42. In 2026, the total Wage Parity Compensation home care aides working in New York City must be paid is $22.19 per hour, which consists of a base wage of $19.65 per hour plus a Wage Parity Supplement Pay of $2.54 per hour. In 2026, the total Wage Parity Compensation home care aides working in Nassau, Suffolk, and Westchester Counties must be paid is $21.32 per hour, which consists of a base wage of $19.65 per hour plus a Wage Parity Supplement Pay of $1.67 per hour.

43. Each wage statement PPL has issued to Plaintiff contains a "Wage Parity Statement" section. It contains the total Wage Parity Compensation it is required to pay Plaintiff, labeled as "Gross Liability" and listing a rate of $22.19 per hour, which is the total compensation the WPA requires be paid to PAs working in New York City. Upon information and belief, the wage statements PPL issues to PAs in Nassau, Suffolk, and Westchester Counties contain the same "Wage Parity Statement" section that reflects the applicable total compensation the WPA requires be paid to PAs working in those counties.

44. In addition, PPL describes how it pays PAs in accordance with the WPA in its online FAQ. *See* Public Partnerships, LLC, *New York CDPAP Frequently Asked Questions*, https://pplfirst.com/new-york-cdpap-frequently-asked-questions/ (last visited Oct. 7, 2026). PPL makes the following statements about its paying total Wage Parity Compensation:

1. "Do PPL's rates account for wage parity laws?

   Yes."

2. "What do PAs get paid with PPL? . . ."

   "Effective January 1, 2026, the minimum base wage rate for PAs serving consumers living in Bronx, New York, Kings, Queens, and Richmond counties is $20.65 per hour."

   "Effective January 1, 2026, the minimum base wage rate for PAs serving consumers living in Nassau, Suffolk, and Westchester counties is $20.05 per hour."

45. PPL also describes how it provides a portion of the PA's Wage Parity Supplement Pay as benefits, in the form of safe and sick leave ("SSL") and 401(a) retirement account allocations. *See* Public Partnerships, LLC, *New York CDPAP Frequently Asked Questions*,

https://pplfirst.com/new-york-cdpap-frequently-asked-questions/ (last visited Oct. 7, 2026). PPL states that it uses a portion of the Wage Parity Supplement Pay:

a. "For wage parity purposes, PAs who work in New York City will have $0.69/hour of their wage parity benefit credited towards SSL."

b. "PAs who work in Nassau County, Westchester County, and Suffolk County will have $0.67/hour of their wage parity benefit credited towards SSL."

c. "For PAs in New York City or Nassau, Westchester, or Suffolk counties, wage parity funds allocated to SSL will be deposited into a 401(a) retirement account once the maximum accrual [56 hours per calendar year] is reached."

d. "Full-time PAs in the downstate regions — Nassau, Suffolk, New York, Kings, Queens, Richmond, Bronx, and Westchester counties — who do not enroll in PPL's SecureHealth plans are automatically enrolled in the PPL CareSecure Retirement Plan, a 401(a) plan that is fully vested based on regular hours worked."

46. Wage Parity Compensation, including Wage Parity Supplement Pay, earned by PAs constitutes "wages" within the meaning of NYLL § 190(1). To the extent any Wage Parity Compensation, including Wage Parity Supplement Pay, is designated as benefits, it constitutes "benefits or wage supplements" within the meaning of NYLL § 198-c.

47. Further, upon information and belief, the purported 401(a) plan to which PPL allocates Wage Parity Supplement Pay does not exist, or PPL has not actually and irrevocably contributed the allocated amounts to it. To that extent, and to the extent PPL's allocation of Wage

Parity Supplement Pay to sick leave does not provide PAs any benefit beyond what PPL is otherwise required by law to provide, those amounts are not benefits at all. They are earnings for labor or services rendered that PPL owes PAs as wages under NYLL § 190(1).

**PPL's Use of Wage Parity Compensation to Fund PAs' Sick Leave Violates the WPA**

48. New York State law requires every employer with 100 or more employees to provide each employee up to 56 hours of paid sick leave per year, accruing at a rate of not less than one hour for every 30 hours worked. NYLL § 196-b. The New York City Earned Safe and Sick Time Act imposes a parallel obligation on employers in New York City. N.Y.C. Admin. Code § 20-911 *et seq.*

49. These obligations apply to every covered employer, independent of the WPA. The cost of providing statutory sick leave is borne by the employer.

50. First, PPL deducts a portion of the PA's Wage Parity Supplement Pay to cover the cost of paid safe and sick leave that PPL is already required by state and local law to provide. *See* NYLL § 196-b; N.Y.C. Admin. Code § 20-911 *et seq.*

51. PPL nonetheless uses PAs' Wage Parity Supplement Pay to cover the cost of paid safe and sick leave (that PPL calls SSL) it is already legally mandated to provide PAs. As PPL acknowledges, it diverts $0.69 per hour of each New York City PA's and $0.67 per hour of each Nassau, Suffolk, and Westchester County PA's Wage Parity Supplement, as a so-called benefit. By way of example , Plaintiff's Pay Statement for the period ending September 19, 2026. From every hour of Plaintiff's Wage Parity Supplement Pay, PPL allocates $0.69 to a line labeled "WPSSL" on Plaintiff's wage statements, which upon information and belief stands for Wage Parity Safe and Sick Leave (SLL).

52. PPL's diverting $0.69 per hour is no coincidence. At Plaintiff's base rate of $20.65 per hour, one hour of paid sick leave accrued for every 30 hours worked – as PPL is required to provide Plaintiff under state and city law – costs PPL approximately $0.69 per hour worked. In short, PPL has simply charged the full cost of its own statutorily required paid sick leave obligation to Plaintiff's Wage Parity Supplement Pay. Upon information and belief, PPL sets the WPSSL allocation for every PA by the same method – diverting each PA's Wage Parity Supplement Pay to cover the cost to PPL to provide legally mandated paid sick leave.

53. PPL's use of PAs' Wage Parity Supplement to supplant the cost of a benefit that PPL is already legally obligated to provide is not a legally permissible benefit under the WPA. The sick leave allocation does not provide Plaintiff nor Class Members with any benefit that they are not otherwise entitled to by law. It is not a benefit of equivalent value to providing the Wage Parity Supplement in cash wages. Its effect is to reduce PAs' total compensation below the minimum the WPA requires in their region: $22.19 per hour in New York City and $21.32 per hour in Nassau, Suffolk, and Westchester Counties.

**PPL Violates the WPA by Diverting Wage Parity Compensation to a 401(a) Plan That, Upon Information and Belief, Does Not Exist**

54. Upon information and belief, PPL deducts PAs' Wage Parity Supplement Pay to purportedly make contributions to 401(a) retirement accounts, in at least three circumstances.

55. First, for full-time PAs who are eligible for but decline to participate in PPL's health plan (called PPL SecureHealth Plan and referred to as "WP Health" on PAs' wage statements) PPL purports to allocate a portion of a PA's Wage Parity Supplement Pay that would have been deducted for the health plan instead to a contribution to a 401(a) retirement account.

56. Second, PPL also purportedly deducts a portion of part-time PAs' Wage Parity Supplement Pay as a contribution to the PA's 401(a) account. PAs who work less than 130 hours in a month are not eligible for PPL's health plan, and therefore, PPL cannot allocate any portion of their Wage Parity Supplement Pay for the health benefit. Instead, PPL directs a portion of these PAs' Wage Parity Supplement Pay as 401(a) contributions.

57. Third, according to PPL, after a PA has accrued 56 hours of paid sick leave, the deduction of Wage Parity Supplement Pay that PPL would have used to cover the cost of the PA's paid sick leave is instead allocated as a contribution to a 401(a) account.

58. In these three scenarios, for PAs working in New York City, PPL allocates $0.85 per hour of a PA's Wage Parity Supplement Pay for a 401(a) contribution. For PAs working in Nassau, Suffolk, and Westchester Counties, PPL allocates a portion of a PA's $1.67 Wage Parity Supplement Pay, in an amount reflected in PPL's payroll records, for a 401(a) contribution.

59. Plaintiff and the Class Members, however, are not aware of PPL funding any 401(a) account or other retirement account with the deductions PPL has taken of their Wage Parity Compensation. Upon information and belief, Plaintiff and the Class Members have not received a retirement plan document, summary plan description, enrollment confirmation, account number, account statement, or any means of accessing a 401(a) retirement account supposedly funded by the deductions PPL made from their Wage Parity Compensation.

60. Plaintiff's wage statements are consistent with the conclusion that PAs' Wage Parity Compensation deducted for contributions to a 401(a) account are not being allocated to such accounts. By way of example, Plaintiff's wage statement for the pay period ending September 19, 2026 allocates $34.00 of her Wage Parity Compensation as "WP Health and/or 401(a)," where

"WP Health" denotes Wage Parity Compensation deductions for PPL's health plan and "401(a)" stands for Wage Parity Compensation deductions for a 401(a) retirement account.

61. As a full-time employee, Plaintiff is eligible to participate in PPL's health plan but declined coverage. Therefore, according to PPL's policy, Plaintiff's Wage Parity Supplement Pay that would have been allocated to the health care plan should have been allocated to a 401(a) plan for Plaintiff.

62. Also, Plaintiff has reached the cap of 56 hours of paid sick leave. Her wage statement for the pay period ending September 19, 2026 reports an available Safe & Sick Leave balance of 56.00 hours. Under PPL's stated policy, the Wage Parity Supplement Pay PPL charges to sick leave would therefore be deposited into a 401(a) account for Plaintiff. Plaintiff's wage statement nonetheless shows PPL allocated $0.69 per hour of her Wage Parity Supplement Pay to "WPSSL," or $27.60 for that week, while her "Total Balance" of sick leave continued to grow, to 59.24 hours, above the 56.00 hours PPL reports as available to her.

63. In addition, upon information and belief, no retirement account exists for the benefit of Plaintiff or the Class Members, and the amounts of Wage Parity Compensation PPL denotes as "401(a)" allocations on Plaintiff and Class Members' wage statements have not been contributed to any retirement account for Plaintiff or the Class Members.

64. By way of example, while Plaintiff's wage statement for the pay period ending September 19, 2026 shows Wage Parity Compensation in the amount of $34.00 being allocated to "WP Health and/or 401(a)," which for Plaintiff must be for a 401(a) contribution since she opted out of PPL's health care, the wage statement nonetheless reports "Other Deductions" of $0.00 and contains no line reflecting any contribution to a 401(a) or other retirement account.

65. The same wage statement contains no current or year-to-date entry for any contribution to a 401(a) plan, even though it allocates $34.00 of Plaintiff's Wage Parity Compensation to "WP Health and/or 401(a)" for that week alone.

66. Upon information and belief, PPL retains the amounts of PAs' Wage Parity Compensation it allocated to the "401(a)" line in PAs' wage statements in its own accounts.

67. Wage Parity Supplement Pay that is neither paid to the worker in cash nor contributed to a benefit for the worker's use has not been paid at all. It remains earned but unpaid wages.

68. Plaintiff does not seek benefits under, or to enforce the terms of, any employee benefit plan. Rather, Plaintiff seeks recovery of wages that, upon information and belief, PPL never paid to her nor paid into any plan for her benefit.

**PPL Violates the WPA and NYLL by Using Wage Parity Compensation to Pay Its Own 401(a) Plan Administrative Fee**

69. PPL has advised PAs that it deducts an administrative fee of $0.05 per hour from Wage Parity Compensation to cover the costs of maintaining the employer-sponsored 401(a) retirement account.

70. This alleged fee is deducted from PAs Wage Parity Supplement Pay to cover PPL's costs of maintaining employer-sponsored retirement accounts.

71. Covering PPL's costs of administering its payroll and benefits is not a legally permissible benefit.

72. This fee has no value to Plaintiff or the Class Members.

73. This fee deducted from PAs' Wage Parity Supplement Pay is not of equal value to PPL paying PAs the same amount in cash wages.

74. This fee deducted from PAs Wage Parity Supplement Pay is not accessible to PAs.

75. By paying this administrative fee out of PAs' Wage Parity Compensation, PPL provides PAs with benefits worth $0.05 per hour less than the Wage Parity Compensation it allocates to the PA's purported 401(a) plan.

76. By way of example, Plaintiff's wage statement for the pay period ending September 19, 2026, indicates that PPL deducted $34.00 (40 hours x $0.85 rate) of her Wage Parity Supplement Pay purportedly as a contribution to a 401(a) account for Plaintiff. If this deduction includes a $0.05 administrative fee per hour, that leaves only $0.80 per hour as purported allocation to a 401(a) account for Plaintiff. For this pay period, the purported 401(a) allocation would thus be only $32.00 (40 hours x $0.80).

77. As a result, PPL pays Plaintiff and the Class Members less than the total minimum compensation the WPA requires.

78. This administrative fee is also a deduction from wages that is not authorized by law and is not for the benefit of the employee, in violation of NYLL § 193.

**PPL Excludes Wage Parity Supplement Pay from the Regular Rate Used to Calculate Overtime**

79. The FLSA requires employers to pay non-exempt employees for hours worked in excess of forty in a workweek at a rate of not less than one and one-half times the employee's regular rate. 29 U.S.C. § 207(a)(1). The NYLL imposes the same requirement, in the manner and methods provided in the FLSA. 12 NYCRR § 142-2.2.

80. The regular rate includes "all remuneration for employment paid to, or on behalf of, the employee," subject only to the exclusions enumerated in 29 U.S.C. § 207(e). The regular rate for a workweek is determined by dividing the employee's total remuneration for employment

in that workweek, other than statutorily excluded payments, by the total number of hours actually worked. 29 C.F.R. § 778.109.

81. Wage Parity Supplement Pay is remuneration for employment. The WPA requires it, and PPL calculates it, on a per-hour basis for hours of work, and PPL reports it on every wage statement as part of the "Total Cash and Benefits" it pays for the hours listed.

82. PPL nonetheless calculates PAs' overtime pay using only their cash base wage. PPL's wage statements list overtime hours as "Overtime Base" hours paid at the WPA cash base rate, plus an "Overtime Premium" equal to one-half of the cash base rate. PPL excludes from that calculation the Wage Parity Supplement Pay it allocates to "WPSSL" and to "WP Health and/or 401(a)."

83. PPL also allocates no Wage Parity Supplement Pay to PAs' overtime hours. The "Wage Parity Statement" section of each wage statement calculates Wage Parity Supplement Pay only on non-overtime hours.

84. No statutory exclusion permits PPL to omit these amounts from the regular rate. The amounts allocated to "WPSSL" are not payments for periods in which no work is performed, *see* 29 U.S.C. § 207(e)(2); they are amounts PPL credits, for each hour of work, toward the compensation the WPA requires for that work. Upon information and belief, the amounts allocated to "WP Health and/or 401(a)" for PAs who are not enrolled in PPL's health plan, including the $0.05 per hour administrative fee PPL retains, are not contributions irrevocably made to a trustee or third person pursuant to a bona fide plan within the meaning of 29 U.S.C. § 207(e)(4) and 29 C.F.R. § 778.215.

85. By way of example, during the pay period ending September 19, 2026, Plaintiff worked 45 hours. PPL paid her $929.25 in cash base wages for those hours (45 hours x $20.65)

and allocated $61.60 of Wage Parity Supplement Pay to "WP Health and/or 401(a)" and "WPSSL" (40 hours x $1.54). PPL paid her an "Overtime Premium" of only $51.63, calculated on her $20.65 cash base rate, and did not account for the Wage Parity Supplement Pay.

86. Plaintiff worked more than forty hours in other workweeks as well.

87. Upon information and belief, PPL applies the same overtime calculation to every PA who works more than forty hours in a workweek.

88. PPL's violations are willful. PPL knew, or showed reckless disregard for whether, its exclusion of Wage Parity Supplement Pay from the regular rate violated the FLSA and the NYLL.

**PPL's Wage Statements Conceal Its Diversion of PAs' Wage Parity Compensation**

89. NYLL § 195(3) requires every employer to furnish each employee, with every payment of wages, a statement listing, among other things, the rate or rates of pay, gross wages, deductions, allowances claimed as part of the minimum wage, and net wages.

90. PPL's wage statements do not comply with NYLL § 195(3). Among other things, they (a) describe the Wage Parity Supplement Pay as "WP Health and/or 401(a)," without identifying whether the money is directed to a health plan or a retirement plan; (b) fail to disclose the $0.05 per hour administrative fee; (c) present the cost of statutory sick leave as part of Wage Parity Compensation; and (d) list overtime hours only at the cash base rate, without stating an overtime rate of pay based on a regular rate that includes Wage Parity Supplement Pay.

91. As a result of these deficiencies, Plaintiff and the Class Members cannot determine from their wage statements whether their Wage Parity Compensation is being paid, where it is going, whether any 401(a) plan in fact exists, nor what contributions, if any, are allocated to their purported retirement plans. This deprived Plaintiff and Class Members of the information

necessary to identify the underpayments and seek payment of wages owed to them, and has delayed and impeded their recovery of those wages.

## FLSA COLLECTIVE ACTION ALLEGATIONS

92. Plaintiff brings the Fourth Cause of Action under 29 U.S.C. § 216(b) on behalf of herself and the following similarly situated persons (the "FLSA Collective"):

> All Personal Assistants who were employed by and paid through Defendants for services performed as part of the New York State Medicaid Consumer Directed Personal Assistance Program in New York City, Nassau County, Suffolk County, and/or Westchester County and who worked more than forty hours in any workweek at any time from June 24, 2026, through the date of final judgment in this matter.

93. Plaintiff and the members of the FLSA Collective are similarly situated. They performed the same work as PAs, were paid through the same payroll system, and were subject to Defendants' common policy and practice of excluding Wage Parity Supplement Pay from the regular rate used to calculate overtime pay.

94. Defendants knew or should have known that the FLSA required them to pay Plaintiff and the members of the FLSA Collective overtime at one and one-half times their regular rate, inclusive of all non-excludable remuneration, for all hours worked over forty in a workweek.

95. The members of the FLSA Collective are readily identifiable from Defendants' payroll and timekeeping records and can be located and notified of this action through those records. Notice should be sent to the members of the FLSA Collective pursuant to 29 U.S.C. § 216(b).

96. Plaintiff has consented in writing to be a party plaintiff in this action pursuant to 29 U.S.C. § 256. Her written consent is attached as Exhibit A.

## NEW YORK CLASS ACTION ALLEGATIONS

97. Plaintiff brings the First and Third Causes of Action under Federal Rule of Civil Procedure 23 on behalf of herself and the following class (the "Class"):

> All Personal Assistants who were employed by and paid through Defendants for services performed as part of the New York State Medicaid Consumer Directed Personal Assistance Program in New York City, Nassau County, Suffolk County, and/or Westchester County at any time from June 24, 2026, through the date of final judgment in this matter.

98. Plaintiff further brings the Second Cause of Action on behalf of herself and the following subclass (the "401(a) Subclass"):

> All Class members who had any portion of their Wage Parity Compensation allocated to a purported 401(a) retirement account on or after June 24, 2026.

99. Plaintiff further brings the Fifth Cause of Action on behalf of herself and the following subclass (the "Overtime Subclass"):

> All Class members who worked more than forty hours in any workweek on or after June 24, 2026.

100. Excluded from the Class, the 401(a) Subclass, and the Overtime Subclass are Defendants' managers, legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judges assigned this case and any member of the Judges' immediate families; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

101. Plaintiff reserves the right to amend the Class, 401(a) Subclass, and Overtime Subclass definitions or to add subclasses as litigation progresses.

102. The members of the Class are readily ascertainable. The number and identity of the Class Members, the hours they worked, their rates of pay, and the allocation of their Wage Parity Compensation are determinable from Defendants' payroll and timekeeping records. For the purpose of notice and other purposes related to this action, their names, addresses, email addresses,

and telephone numbers are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

103. The Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Upon information and belief, there are approximately 200,000 Class Members.

104. Plaintiff's claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

105. All Class Members regardless of region were subjected to Defendants' same corporate policies and practices of allocating PAs' Wage Parity Compensation for statutorily-required paid sick leave, to PPL's health plan, purported 401(a) retirement accounts, and administrative fees, of excluding Wage Parity Supplement Pay from the regular rate used to calculate overtime, and of issuing uniform wage statements that fail to accurately describe those allocations.

106. Plaintiff and the Class Members have all sustained similar types of damages as a result of Defendants' failure to comply with the WPA and NYLL. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

107. Plaintiff is able to fairly and adequately protect the interests of the Class Members and has no interests antagonistic to the Class Members.

108. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

109. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions would engender. Because the damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications, establishing incompatible standards of conduct for Defendants. The issues in this action can be decided by means of common, class-wide proof.

110. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

111. Common questions of law and fact exist as to the Class that predominate over any questions affecting only individual Class Members, and include, but are not limited to, the following:

(a) whether Defendants are employers of the Class Members within the meaning of the NYLL;

(b) whether Wage Parity Compensation constitutes wages or wage supplements within the meaning of the NYLL;

(c) whether Defendants may use Wage Parity Compensation to pay for paid sick leave required by the NYLL;

(d) whether any 401(a) plan has been funded with Wage Parity Compensation allocated to the "WP Health and/or 401(a)" line or transferred from accrued sick leave in excess of 56 hours;

(e) whether Defendants may use Wage Parity Compensation to pay a per hour administrative fee;

(f) whether Defendants' allocations constitute deductions prohibited by the NYLL;

(g) whether Defendants' wage statements comply with NYLL § 195(3);

(h) whether Wage Parity Supplement Pay must be included in the regular rate used to calculate overtime pay under the NYLL; and

(i) the nature and extent of class-wide injury and the measure of damages for those injuries.

## ARTICLE III STANDING ALLEGATIONS

112. Plaintiff suffered an injury in fact that is concrete, particularized, and actual.

113. During Plaintiff's employment with Defendants, Defendants failed to pay Plaintiff the full Wage Parity Compensation owed to her by diverting a portion of her Wage Parity Supplement Pay to fund statutory sick leave, to a 401(a) plan that, upon information and belief, was never funded, and, or in the alternative, to pay Defendants' own administrative fee for that plan. Defendants also failed to pay Plaintiff overtime at one and one-half times her regular rate. As a result, Plaintiff was deprived of wages to which she was entitled and of the use and time value of that money.

114. Defendants' inaccurate wage statements caused Plaintiff a concrete downstream harm: they failed to include all compensation in the overtime rate, concealed the diversion of her

Wage Parity Compensation, and prevented her from determining whether, and how much, she was underpaid, thereby impeding her ability to recover the wages owed to her.

115. Plaintiff's injuries were caused by Defendants and can be redressed through the judicial relief of the ordering of the payment of monetary damages by Defendants.

116. Each Class Member suffered the same concrete, particularized, and actual injuries, which were caused by Defendants and can be redressed through the judicial relief of ordering the payment of monetary damages by Defendants to the Class Members.

**FIRST CAUSE OF ACTION**
**Failure to Pay Wage Parity Compensation**
**(Sick Leave Allocation)**
**(Brought on behalf of Plaintiff and the Rule 23 Class)**

117. Plaintiff, on behalf of herself and the Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

118. The wage payment provisions of NYLL Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor regulations, apply to Defendants and protect Plaintiff and the Class.

119. Under Article 36 of the New York Public Health Law, N.Y. Pub. Health L. §§ 3614-C and 3614-F, an employer of home care workers must pay each home care worker Wage Parity Compensation of no less than a prescribed living wage rate in cash and the remainder of the prescribed amount in some combination of cash and/or benefits. Wage Parity Compensation earned by Plaintiff and the Class Members constitutes wages within the meaning of NYLL § 190(1).

120. Defendants failed to pay Plaintiff and the Class Members the Wage Parity Compensation owed to them by allocating a portion of their Wage Parity Supplement Pay to fund

paid sick leave that Defendants were independently required to provide under NYLL § 196-b and the New York City Earned Safe and Sick Time Act.

121. Defendants' allocation of Wage Parity Compensation to statutory paid sick leave constitutes a deduction from wages that is not authorized by law and is not for the benefit of the employee, in violation of NYLL § 193, and a failure to pay wages earned, in violation of NYLL § 191.

122. Defendants' violations were willful.

123. Due to Defendants' violations of NYLL Article 6, Plaintiff and the Class Members are entitled to recover from Defendants their unpaid wages, liquidated damages equal to one hundred percent of the unpaid wages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, as provided for by NYLL § 198(1-a).

**SECOND CAUSE OF ACTION**
**Failure to Pay Wage Parity Compensation**
**(401(a) Allocation)**
**(Brought on behalf of Plaintiff and the 401(a) Subclass)**

124. Plaintiff, on behalf of herself and the 401(a) Subclass, realleges and incorporates by reference all allegations in all preceding paragraphs.

125. Wage Parity Compensation earned by Plaintiff and the 401(a) Subclass constitutes wages within the meaning of NYLL § 190(1) and, to the extent designated as benefits, benefits or wage supplements within the meaning of NYLL § 198-c.

126. Upon information and belief, Defendants have not contributed the Wage Parity Compensation allocated to the "WP Health and/or 401(a)" line, or the Wage Parity Compensation charged to sick leave and transferred to the purported 401(a) account after Class Members accrued 56 hours of sick leave, to any funded 401(a) plan, and have not paid it to Plaintiff or the 401(a) Subclass in any other form.

127. By withholding this Wage Parity Compensation, Defendants failed to pay wages earned, in violation of NYLL § 191; made deductions from wages not authorized by law and not for the benefit of the employee, in violation of NYLL § 193; and failed to pay benefits or wage supplements within thirty days after such payments were required to be made, in violation of NYLL § 198-c.

128. In the alternative, to the extent Defendants contributed any portion of this Wage Parity Compensation to a 401(a) plan, Defendants used Wage Parity Compensation to pay a $0.05 per hour administrative fee that is Defendants' own cost of doing business, is not a benefit to Plaintiff or the 401(a) Subclass, and is a deduction from wages prohibited by NYLL § 193.

129. Defendants' violations were willful.

130. Due to Defendants' violations of NYLL Article 6, Plaintiff and the 401(a) Subclass are entitled to recover from Defendants their unpaid wages and wage supplements, liquidated damages equal to one hundred percent of the unpaid amounts, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, as provided for by NYLL § 198(1-a).

**THIRD CAUSE OF ACTION**
**New York Labor Law § 195(3): Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff and the Class)**

131. Plaintiff, on behalf of herself and the Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

132. Defendants failed to furnish Plaintiff and the Class Members, with each payment of wages, an accurate statement containing the information required by NYLL § 195(3), including accurate statements of their rates of pay, deductions, and allowances.

133. Defendants' failure to provide accurate wage statements concealed the diversion of Plaintiff's and the Class Members' Wage Parity Compensation and impeded their ability to identify and recover the wages owed to them.

134. Due to Defendants' violations of NYLL § 195(3), Plaintiff and the Class Members are entitled to recover from Defendants statutory damages of $250 for each workday that the violations occurred or continue to occur, up to a maximum of $5,000 each, together with costs and reasonable attorneys' fees, as provided for by NYLL § 198(1-d).

**FOURTH CAUSE OF ACTION**
**Fair Labor Standards Act: Failure to Pay Overtime at the Regular Rate**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

135. Plaintiff, on behalf of herself and the members of the FLSA Collective, realleges and incorporates by reference all allegations in all preceding paragraphs.

136. Defendants are employers within the meaning of 29 U.S.C. § 203(d), and Plaintiff and the members of the FLSA Collective are employees within the meaning of 29 U.S.C. § 203(e) who are entitled to overtime compensation under 29 U.S.C. § 207.

137. Defendants failed to pay Plaintiff and the members of the FLSA Collective one and one-half times their regular rate for hours worked in excess of forty per workweek, in violation of 29 U.S.C. § 207(a)(1), including by excluding Wage Parity Supplement Pay from the regular rate on which they calculated overtime pay.

138. Defendants' violations were willful, and Defendants did not act in good faith or with reasonable grounds for believing that their conduct complied with the FLSA.

139. Due to Defendants' violations of the FLSA, Plaintiff and the members of the FLSA Collective are entitled to recover from Defendants their unpaid overtime compensation, an equal amount as liquidated damages, reasonable attorneys' fees, and costs, pursuant to 29 U.S.C. § 216(b).

**FIFTH CAUSE OF ACTION**
**New York Labor Law: Failure to Pay Overtime at the Regular Rate**
**(Brought on behalf of Plaintiff and the Overtime Subclass)**

140. Plaintiff, on behalf of herself and the Overtime Subclass, realleges and incorporates by reference all allegations in all preceding paragraphs.

141. The overtime provisions of NYLL Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations, including 12 NYCRR Part 142, apply to Defendants and protect Plaintiff and the Overtime Subclass.

142. Defendants failed to pay Plaintiff and the Overtime Subclass one and one-half times their regular rate for hours worked in excess of forty per workweek, in violation of 12 NYCRR § 142-2.2, including by excluding Wage Parity Supplement Pay from the regular rate on which they calculated overtime pay.

143. Defendants' violations were willful.

144. Due to Defendants' violations of NYLL Article 19, Plaintiff and the Overtime Subclass are entitled to recover from Defendants their unpaid overtime compensation, liquidated damages equal to one hundred percent of the unpaid overtime compensation, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, as provided for by NYLL § 663(1).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all members of the Class, the 401(a) Subclass, the Overtime Subclass, and the FLSA Collective, requests entry of judgment and the following specific relief:

A. Designation of this action as a collective action on behalf of the FLSA Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all members of the FLSA Collective, apprising them of the pendency of this action and permitting them to assert timely FLSA claims by filing individual consents to sue pursuant to 29 U.S.C. § 256;

B. Certification of this case as a class action pursuant to Federal Rule of Civil Procedure 23, with respect to the Class, the 401(a) Subclass, and the Overtime Subclass;

C. Designation of Plaintiff as representative of the Class, the 401(a) Subclass, the Overtime Subclass, and the FLSA Collective, and counsel of record as Class Counsel;

D. Issuance of a declaratory judgment that the practices complained of in this Class and Collective Action Complaint are unlawful under the FLSA, the New York Home Care Worker Wage Parity Act, the New York Labor Law, and the supporting New York State Department of Labor regulations;

E. An order requiring Defendants to provide an accounting of all Wage Parity Compensation allocated to the "WP Health and/or 401(a)" line and to "WPSSL" from June 24, 2026 through the date of judgment, including the amounts, if any, contributed to any plan and the amounts retained by Defendants;

F. Payment of all unpaid wages, overtime compensation, and wage supplements owed to Plaintiff, the Class Members, and the members of the FLSA Collective;

G. Payment of liquidated damages permitted by law pursuant to the FLSA, the NYLL, and the supporting New York State Department of Labor regulations;

H. Statutory damages pursuant to NYLL § 198(1-d);

I. Appropriate equitable and injunctive relief to remedy Defendants' violations of federal and New York law, including but not limited to an order enjoining Defendants from continuing to allocate Wage Parity Compensation to statutory sick leave, to any plan that is not funded, or to Defendants' administrative fees, and from excluding Wage Parity Supplement Pay from the regular rate used to calculate overtime pay;

J. Attorneys' fees and costs of action incurred herein, including expert fees;

K. Pre-judgment and post-judgment interest, as provided by law;

L. A reasonable service award to compensate Plaintiff for the time she has spent and will spend attempting to recover damages for the Class and the FLSA Collective and for the risks she is taking in doing so; and

M. Such other legal and equitable relief as this Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 7, 2026

Respectfully submitted,

/s/ Artemio Guerra
Artemio Guerra
Briana Beltran
**HKM EMPLOYMENT ATTORNEYS LLP**
153 Main Street, Suite 201
New Paltz, NY 12561
Telephone: (212) 439-5127
aguerra@hkm.com
bbeltran@hkm.com

*Attorneys for Plaintiff, the Rule 23 Class, and the FLSA Collective*